UNITED STATES, Appellee

v

ADDISON R. MITCHELL, SR., SR., Private E–2, U. S. Army, Appellant

6 USCMA 579, 20 CMR 295

No. 7021

Decided December 21, 1955

 ██

*First Lieutenant James L. Gault* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James M. Scott.*

*First Lieutenant Robert L. Taylor* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, Lieutenant Colonel Andrew D. Kane,* and *Captain M. Douglas Hodges.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was charged with assaulting a superior noncommissioned officer who was in the execution of his office (Specification 1) and with willful disobedience of the officer's order (Specification 2), in violation of Article 91, Uniform Code of Military Justice, 50 USC § 685. He pleaded guilty to the former and not guilty to the latter, but was convicted of both charges. Intermediate appellate authorities affirmed the conviction. We granted the accused's petition for review to consider the sufficiency of the evidence to support the findings of guilty of willful disobedience.

On Christmas Day, 1954, Corporal Dale H. Green, was on duty as Charge of Quarters. One of his duties was to prevent disorderly behavior in the orderly room. Shortly before midnight, the accused and several friends entered the orderly room. They were disorderly. Corporal Green "asked" the accused to leave. His "exact" words were: "Mitchell, leave out the Orderly Room. This is not a place to be carousing." At first the accused "refused"; then he acceded and left. Later, he returned. Only Corporal Green was present. The accused told him that "he

didn't like the way . . . [he, Green] acted." Corporal Green "got up" and "told" the accused to leave. He said, "Mitchell, leave out the Orderly Room because I don't want to have any trouble with you." Corporal Green then turned to get his shoes. The "next thing" he knew was that he was "cut in the back." A "commotion" ensued. Other persons came into the orderly room and "separated" Corporal Green and the accused.

During his cross-examination, Corporal Green testified that his statement to the accused and his friends was meant as "friendly advice," in the sense of a "request from a friend to a friend." It was not an order, and he was not "exercising" the authority of his "military position." However, on redirect examination he was asked by trial counsel whether he made "both those statements . . . on . . . [his] authority as CQ." He replied in the affirmative. He also said that on the first occasion the accused left the orderly room without saying anything.

Examined by court members, the witness testified as follows:

"Q You ordered him to leave, did you not, without any further trouble?

580

A Yes, sir.

Q You were a corporal speaking to a private?

A Yes, sir.

Q You expected him to leave and to obey your order, didn't you?

A. Yes sir."

To be classed as an order, a communication must amount to a "positive command." United States v Glaze, 3 USCMA 168, 173, 11 CMR 168; Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 578. The form in which the command is expressed is immaterial. The Government contends that the character of the communication can be determined without regard to the state of mind of the communicant. Whatever the merits of the argument in a different factual setting, it definitely cannot be applied to this case. If the language of a communication lacks specificity of meaning, extrinsic evidence is admissible for the purpose of clarification. United States v Voorhees, 4 USCMA 509, 529, 16 CMR 83. Here, Corporal Green's "exact" words were, "Mitchell, leave out the Orderly Room." These words are not so commonly used and understood that all reasonable persons would conclude that they constitute a positive command. Consequently, evidence is admissible to show whether they were, in fact, understood as an order by the interested parties. United States v Glaze, supra.

A review of the evidence shows that Corporal Green used the quoted words in two different senses. The first time he used them merely to express "friendly advice" to the accused and his friends. On the second occasion, he acted "on . . . [his] authority as CQ." He then "ordered" the accused to leave, and he "expected him to leave and to obey . . . [his] order." The same dichotomy appears in the witness' testimony that, on the first occasion, he "asked" the accused to leave; on the second, he "told" him to go. Clearly then Corporal Green understood that his second statement was an order. It is true, of course, that a witness generally "must state facts and not his opinions

or conclusions." Manual for Courts-Martial, United States, 1951, paragraph 138e. United States v DeCarlo, 1 USCMA 91, 1 CMR 90. Here, however, Corporal Green's purpose in making the statement was material to the issue. His testimony appears as an indication of his purpose, not as a statement of opinion or conclusion. As the New York Court of Appeals said in McKown v Hunter, 30 NY 625, 628–629:

". . . These cases go very far to establish the general principle, that where the motive of a witness in performing a particular act, or making a particular declaration, becomes a material issue in a cause or reflects important light upon such issue, he may himself be sworn in regard to it, notwithstanding the difficulty of furnishing contradictory evidence, and notwithstanding the diminished credit to which his testimony may be entitled as coming from the mouth of an interested witness."

Left for consideration is whether the accused believed that Corporal Green had ordered him to leave. In the absence of other facts, we would be unwilling to say that the accused's understanding of the words, "Mitchell, leave out the Orderly Room" was necessarily more precise than that of the declarant. Since Corporal Green ascribed a double meaning to his statement, the accused may also have thought that it could constitute either an order or merely advice. On the basis of the evidence, however, the court-martial was justified in concluding that he understood it to be an order.

The accused went back to the orderly room to complain of Corporal Green's conduct. If he thought that he had been given only "friendly advice" on the first occasion, it is indeed strange that he should criticize Corporal Green. His declared resentment of Corporal Green's conduct strongly indicates that he knew that he had been ordered to leave the orderly room. When we add to this circumstance, the accused's razor attack on Corporal Green, the indication virtually becomes demonstration. It is contrary to human experience to

conclude that a person of sound mind would commit an unprovoked assault upon one whom he believes has given him "friendly advice." However, such an attack is not unusual for a person who resents an order to do something which he does not want to do. United States v Glaze, supra. Accordingly, the evidence is sufficient to support the findings of guilty.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.